FILED
CLERK, U.S. DISTRICT COURT
2/24/21
CENTRAL DISTRICT OF CALIFORNIA
BY: ___cs___ DEPUTY

FEE PAID

Annie S. Wang (CA SBN 243027)
annie@wangalc.com
J. Andrew Coombs, Of Counsel (CA SBN 123881)
andy@wangalc.com
Wang Law Corporation
1150 Foothill Boulevard, Suite E
La Cañada Flintridge, California 91011
Telephone: (818) 500-3200
Facsimile: (818) 500-3201

Attorneys for Plaintiffs
Seiko Epson Corporation
and Epson America, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Seiko Epson Corporation and Epson America, Inc.,<br><br>Plaintiffs,<br><br>v.<br><br>Thomas Nelson d/b/a Seller Account TM Nelsons, Ganter d/b/a Seller Account GANTERY, and Does 1- 10, inclusive,<br><br>Defendants. | EDCV21-320-JWH(SPx)<br>**[Request Filing Under Seal]**<br><br>Case No.<br><br>COMPLAINT FOR TRADEMARK INFRINGEMENT; UNFAIR COMPETITION; AND FALSE ADVERTISING<br><br>DEMAND FOR A JURY TRIAL |

Plaintiffs Seiko Epson Corporation ("SEC") and Epson America, Inc. ("Epson America") (collectively "Plaintiffs") for their Complaint allege as follows:

<u>**Allegations Common to All Claims for Relief**</u>

**A.   Jurisdiction and Venue**

1.   Plaintiffs' claims for trademark infringement, unfair competition and false advertising arise under the Lanham Trademark Act, as amended, 15 U.S.C., § 1051, *et seq*. The Court has jurisdiction over the subject matter of these claims pursuant to 15 U.S.C. § 1121 and 28 U.S.C. § 1331 and § 1338.

2.   Venue is proper within the Central District of California pursuant to 28 U.S.C. § 1391(b) and § 1400(a).

**B.     Introduction**

3.     Plaintiffs bring this action to combat the widespread infringement of their trademark rights by Thomas Nelson d/b/a Seller Account TM Nelsons and Ganter d/b/a Seller Account GANTERY ("Defendants") who infringe Plaintiffs' rights by the unlawful offer, distribution, and sale of ink cartridges and ink bottles using identical, unauthorized copies of Plaintiffs' trademarks on counterfeit retail box packaging with falsified "Best Before" dates ("Counterfeit Products").  The Counterfeit Products are described as new or genuine when they are in fact infringements and are also frequently significantly altered, expired or near expired, or used.  The Defendants operate through Amazon.com, Inc.'s ("Amazon") marketplace platform Amazon.com (the "Website").  The Defendants also use a variety of Amazon services to avoid detection while benefitting from Amazon's high market visibility and business services.  The Counterfeit Products are materially different from legitimate ink cartridges and ink bottles manufactured and distributed by Plaintiffs for offer and sale in the domestic United States market.  The Counterfeit Products deceive consumers into thinking they are buying new, genuine Epson products, and their poor quality is incredibly damaging to Plaintiffs' name and reputation.

**C.     Plaintiffs**

4.     SEC is a corporation duly organized and existing under the laws of Japan.  Its principal place of business is located in Nagano, Japan.

5.     Epson America is a corporation organized and existing under the laws of the State of California, having its principal place of business in Long Beach, California.  As the North American sales, marketing and customer service affiliate of SEC, Epson America is SEC's exclusive licensee for the distribution of inkjet printers, ink cartridges, and ink bottles using SEC's trademarks.

6.     SEC, together with its subsidiaries, including but not limited to Epson America, is a diversified, global electronics company with operations that offer

products in five (5) principal categories: Consumer and Business Printers; Home, Education and Business Video Projectors; Commercial Printers; Manufacturing Robots; and Augmented Reality Smart Glasses.

7.   A significant aspect of Plaintiffs' business is the production and worldwide distribution of its Epson ink cartridges and ink bottles for Epson printers, which are used for personal, commercial and creative purposes.  Today Epson is one of the world's leading and most respected brands in the area of printing technologies. Epson printers are renowned for their performance, productivity, reliability and cost effectiveness.

8.   SEC is the owner of all relevant intellectual property rights in a variety of trademarks in the specific classes of goods for ink, cartridges, bottles, instruction manuals, circuits and software, specifically including but not limited to EPSON® (Reg. No. 1,134,004), EPSON® (Reg. No. 2,144,386), EPSON® (Reg. No. 2,949,374), EPSON® (Reg. No. 3,092,025), EPSON® (Reg. No. 3,520,274), Better Products for a Better Future® (Reg. No. 3,875,333), EPSON EXCEED YOUR VISION® (Reg. No. 3,448,351), DURABRITE® (Reg. No. 2,644,235), and ECOTANK® (Reg. No. 4,875,047) among others (the "Trademarks").  The Trademarks are world famous and distinguish SEC and Epson America products. The Trademarks are valid, subsisting, in full force and effect, have been registered for more than five years and are incontestable as provided by Section 1065 of the Lanham Act.  Each year Plaintiffs spend significant amounts to develop and maintain the considerable goodwill they enjoy in the Trademarks and in their reputation for high quality.  Plaintiffs have secured exclusive rights to U.S trademark registrations, including, but not limited to, the Trademarks that are attached hereto as Exhibit A.

9.   Plaintiffs have continuously used the Trademarks from the registration dates, or earlier, until the present and at all times relevant to the claims alleged in this Complaint.

10. As a result of advertising and sales, together with longstanding consumer acceptance, the Trademarks identify SEC's products and authorized sales of these products. The Trademarks have acquired secondary meaning in the minds of consumers throughout the United States and the world.

### D. **Defendants**

11. Plaintiffs are informed and believe, and upon that basis allege, that the Defendants, both of which sell purported "Epson" products exclusively, conduct extensive online sales including sales on the Website using fanciful seller accounts. Plaintiffs are informed and believe that the Defendants are co-conspirators and are related given that they are consistent in following a pattern of conduct selling the same infringing product, sometimes using the same product listing, but always using the same or similar counterfeit "Epson" branded retail box packaging. The Defendants both use Fulfillment by Amazon ("FBA") services, explained in further detail below, and they sell their Counterfeit Products at similar low price points.

12. Plaintiffs are informed and believe, and upon that basis allege, that Defendant Thomas Nelson is an individual and doing business as Amazon Seller Account TM Nelsons and on information and belief, others which are the subject of ongoing investigation and discovery ("Nelson"). Plaintiffs are further informed and believe, and upon that basis allege, that Nelson is a resident of Ontario, California as he uses an address in Ontario, California in connection with Amazon Seller Account TM Nelsons. Plaintiffs are informed and believe that Nelson utilizing Amazon's FBA services, also shipped product to residents within this judicial district from Lexington, Kentucky, and North Las Vegas, Nevada. Plaintiffs are further informed and believe, and upon that basis allege, Nelson had the right and ability to supervise or control the infringing activity alleged herein and had a direct financial interest in such activity. Nelson is subject to the jurisdiction of this Court through his promotion, distribution, advertisement and/or sale of the Counterfeit Products which infringe the Trademarks within this judicial district.

13. Plaintiffs are informed and believe, and upon that basis allege, that Defendant Ganter is a business entity, the form of which is currently unknown to Plaintiffs, and doing business as Amazon Seller Account GANTERY, and on information and belief, others which are the subject of ongoing investigation and discovery ("Ganter"). Ganter uses a business address in Ontario, Canada, and Plaintiffs are informed and believe that Ganter utilizing Amazon's FBA services, shipped product to residents within this judicial district from Lexington, Kentucky, and North Las Vegas, Nevada. Plaintiffs are further informed and believe, and upon that basis allege, Ganter had the right and ability to supervise or control the infringing activity alleged herein and had a direct financial interest in such activity. Ganter is subject to the jurisdiction of this Court through its promotion, distribution, advertisement and/or sale of the Counterfeit Products which infringe the Trademarks within this judicial district

14. Upon information and belief, Does 1 – 10 are either entities or individuals who are residents of or present in this judicial district, or are subject to the jurisdiction of this Court. Upon information and belief, Does 1 – 10 are principals, supervisory employees, or suppliers of one or other of the named defendants or other entities or individuals who are, in this judicial district, manufacturing, distributing, selling and/or offering for sale merchandise which infringes the Trademarks. The identities of the various Does are unknown to Plaintiffs at this time. The Complaint will be amended to include the names of such individuals when identified. The named Defendants and Does 1 – 10 are collectively referred to herein as "Defendants."

E.  **Defendants' Infringing Activities**

15. Defendants have copied, reproduced, distributed, advertised and/or sold and continue to copy, reproduce, distribute, advertise and/or sell the Counterfeit Products, infringing the Trademarks owned by Plaintiffs. Defendants knew or should have known Epson America is located in this district as its location in "Long

Beach, CA" was prominently marked on the counterfeit retail box packaging of the Counterfeit Products.

16. On information and belief, Defendants' infringing activities are part of a complex scheme that sources counterfeit, used, remanufactured, expired or near expired, or "Initial Cartridges" that are not intended for resale separately from the printers with which they were originally bundled. Any used cartridges or bottles are in and of themselves materially different from authorized versions of Epson cartridges and bottles sold in the United States insofar as they were collected after use by consumers and refilled with ink not made by Epson. Initial Cartridges are in and of themselves materially different from authorized versions of Epson cartridges sold in the United States as they lack the kind of protective packaging and other pertinent consumer information consistent with retail versions, and many have lower page yields. Counterfeit Product sold by Defendants are reworked and/or re-labeled in varying degrees though the cartridges and bottles are re-packaged in counterfeit retail box packaging, and misrepresented as new and/or genuine Epson ink cartridges and ink bottles for the United States market with false or advanced "Best before" dates aimed at maximizing resale opportunities.

17. Defendants' counterfeit ink bottles also do not have the same standard of manufacture nor the same ink type as genuine Epson ink bottles.

18. Plaintiffs are also informed and believe that as part of the reworking process as to some of the counterfeit cartridges, Defendants remove the cartridges from their original packaging and from their high quality vacuum seal in order to reprogram and/or replace the accompanying Epson Integrated Circuit ("IC") chip affixed to every genuine Epson cartridge and/or also to replace the original Epson label with a counterfeit label and substitute their own, non-genuine vacuum bag packaging. Manipulating the IC chip and substituting counterfeit Epson labels on the cartridges conceals the fraudulent nature of the product Defendants sell. In so doing, the quality and lifespan of the ink is degraded, and packaging with instructions for

use of the cartridge and important consumer information, specifically including the accurate "Best before" date among other things, is removed. Defendants distribute the materially altered and now counterfeit cartridges in counterfeit retail box packaging to unsuspecting consumers as new and genuine Epson ink cartridges with falsified "Best before" dates using the Website, Amazon's logistics and FBA services and its payment processing services.

19. Amazon itself is a trusted authorized reseller of Epson branded products on its worldwide websites. Amazon allows third party sellers to use its websites to sell products, including many of the same products as sold by Amazon itself. Amazon's policies and contracts with third party sellers prohibit sales of deceptively described products and products that infringe intellectual property rights. Nonetheless, the Website, like other internet marketplaces, is used by some unscrupulous sellers, like Defendants, that compete unfairly and conceal their deceptive activities from Amazon, trademark owners and consumers.

20. Among other services, Amazon offers an extremely well-known e-commerce platform in the U.S. to third parties, including Defendants, to sell products on the Website. The Website is reportedly the eleventh most popular website in the world and third in the United States according to Alexa.com as of November 2020.

21. Some unscrupulous sellers, like Defendants, are able to use Amazon's extensive sales support services in deliberate violation of Amazon policies to increase sales of counterfeit or other deceptive products. Such services include, but are not limited to, design support for the listing that describes and illustrates the product being offered, use of specific Amazon Standard Identification Numbers ("ASIN") unique to each product listing, advertising the product listings on other internet websites, access to a huge community of registered Amazon customers that regularly purchase products offered by Amazon sellers, a "Message Center" service facilitating communications between buyers and sellers, and FBA fulfillment services through which Amazon warehouses and also provides packaging and

shipping services. For certain products, the FBA program utilizes seller specific Fulfillment Network Stock Keeping Unit ("FNSKU") numbers to organize and track inventory. In 2017, Amazon reports that it shipped 2 billion items to customers in 185 countries on behalf of small businesses using its FBA program. FBA shipments reflect Amazon's own address on the shipping labels as the return address. The Website also provides a payment processing service which accepts payment for goods sold on the Website where consumers pay Amazon instead of the seller directly.

22. Defendants employ the Website platform and Amazon services to sell large quantities of their Counterfeit Products relatively anonymously. Defendants were FBA sellers who sold products attached to particular ASINs and used seller specific FNSKU numbers on their Counterfeit Products, identified in the attached Exhibit B. Defendants have distributed, advertised and sold and continue to distribute, advertise and sell the Counterfeit Products using Amazon's services including the Website, FBA and the Amazon payment processing service. Defendants have not been authorized by Plaintiffs to reproduce, distribute, sell or offer for sale the Counterfeit Products in the United States.

23. Plaintiffs have made numerous sample purchases from the Defendants consisting of Counterfeit Products. Plaintiffs are harmed by this conduct. Not only are materially different products being distributed into interstate commerce by Defendants in mass quantities, they are deceptively repackaged in counterfeit retail box packaging and are usually counterfeit, significantly altered, expired or near expired, and used products distributed in lieu and in place of authorized Epson ink cartridges and ink bottles manufactured and packaged by Epson appropriately for sales in the United States. The Defendants' reworking process negatively impacts the quality of the cartridges and the ink and in cases of used product, may not even contain Epson ink. Defendants' use of the Epson Trademarks tricks consumers into believing they are purchasing a new product, manufactured and approved by Epson.

As a result of this counterfeiting scheme and Defendants' deceptive practices, Plaintiffs lose control over their trademarks and by the injection of substandard product into the market by Defendants, the goodwill and reputation Plaintiffs have developed through their investment, innovation, and dedication to customer satisfaction is irreparably damaged.

24. Defendants are currently engaged in such illicit practices and, unless enjoined by this Court, will continue such unauthorized and illicit practices. By engaging in this conduct, Defendants have acted in willful disregard of laws protecting Plaintiffs' goodwill and related proprietary rights and have confused and deceived, or threaten to confuse and deceive, the consuming public concerning the source and sponsorship of the products. By their wrongful conduct, Defendants have traded upon and diminished Plaintiffs' goodwill.

## FIRST CLAIM FOR RELIEF
### (Trademark Infringement)

25. Plaintiffs repeat and reallege all of the allegations contained in paragraphs 1 through 24, inclusive, as though set forth herein in full.

26. Plaintiffs are the owners of exclusive rights to Plaintiffs' Trademarks, including the federal registrations indexed as Exhibit A. Each of the trademark registrations relating to Plaintiffs' Trademarks is in full force and effect.

27. Defendants' importation, manufacture, advertisement, display, promotion, marketing, offer for sale, sale, and/or distribution of the Counterfeit Products are likely to cause confusion or to cause mistake or to deceive the relevant public and trade regarding the affiliation, sponsorship, endorsement or approval of Defendants' Counterfeit Products by Plaintiffs. Plaintiffs are aware of consumer complaints attached to Defendants' ASINs where complaints regarding the quality and performance of the unauthorized products were improperly directed at Epson. Such confusion, mistake and deception is aggravated by the confusing similarity between the Trademarks and the use of near identical if not identical likenesses in

connection with the Defendants' Counterfeit Products in the same type of goods made, imported and sold by or under authority of Plaintiffs.

28. Defendants have used and continue to use in commerce unauthorized reproductions, copies, and/or colorable imitations of Plaintiffs' Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of the Counterfeit Products, which uses are likely to cause confusion, mistake and/or deception among consumers. Defendants are therefore liable to Plaintiffs for infringement of Plaintiffs' Trademarks pursuant to 15 U.S.C. § 1114.

29. Plaintiffs are informed and believe and, upon that basis allege, that Defendants, and each of them, acted with knowledge of the federally registered trademarks alleged herein and of the valuable goodwill Plaintiffs enjoy in connection therewith, with intent to confuse, mislead and deceive the public into believing that the Defendants' Counterfeit Products were sold by Plaintiffs, or are in some other manner, approved or endorsed for sales in the U.S. by Plaintiffs. Defendants' use of reproductions, copies, and/or colorable imitations of Plaintiffs' Trademarks, without Plaintiffs' consent or authorization, including on the Counterfeit Products themselves, was and continues to be intentional and willful within the meaning of 15 U.S.C. § 1114 and § 1117.

30. Plaintiffs have suffered and continue to suffer irreparable harm and damages a result of Defendants' acts of trademark infringement in amounts thus far not determined but within the jurisdiction of this Court, which amounts should each be trebled pursuant to 15 U.S.C. § 1117. In order to determine the full extent of such damages, including such profits as may be recoverable under 15 U.S.C. § 1117, Plaintiffs will require an accounting from each Defendant of all monies generated from the, importation, manufacture, distribution and/or sale of the Defendants' products as alleged herein. In the alternative, Plaintiffs may elect to recover statutory damages pursuant to 15 U.S.C. § 1117(c).

31. Defendants' conduct has injured Plaintiffs in an amount to be determined at trial, and has caused and will continue to cause irreparable injury to Plaintiffs, for which Plaintiffs have no adequate remedy at law. As such, Plaintiffs seek injunctive relief pursuant to 15 U.S.C. § 1116, as well as actual damages and Defendants' profits pursuant to 15 U.S.C. § 1117(a), and their reasonable attorneys' fees in prosecuting this action pursuant to 15 U.S.C. § 1117(a). Further, because Defendants' infringing conduct has been and continues to be willful, Plaintiffs are entitled to an enhanced damages award pursuant to 15 U.S.C. § 1117(a). In the alternative, Plaintiffs may elect to recover statutory damages pursuant to 15 U.S.C. § 1117(c).

## SECOND CLAIM FOR RELIEF
### (Unfair Competition)

32. Plaintiffs bring the following claim of unfair competition under the Lanham Act against Defendants and incorporate by reference the allegations contained in paragraphs 1 through 31 above.

33. As a direct result of Plaintiffs' longstanding use, sales, advertising, and marketing, the Trademarks have acquired secondary and distinctive meaning among the public who have come to identify the Trademarks listed with Plaintiffs and their products.

34. The Defendants' Counterfeit Products exactly duplicate and appropriate the Trademarks and delude and confuse the public into believing that Plaintiffs approved, authorized, or sponsored the ink cartridges and ink bottles sold, offered for sale, or distributed by Defendants.

35. Defendants, by misappropriating and using the likenesses of the Trademarks in connection with the sale of the Counterfeit Products are misrepresenting and will continue to misrepresent and falsely describe to the general public the origin and sponsorship of Defendants' products. Defendants have caused such Counterfeit Products to enter into interstate commerce willfully with full

knowledge of the falsity of the designation of their origin and description and representation in an effort to mislead the purchasing public into believing that their products are authorized by Plaintiffs.

36. These acts constitute a violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

37. Defendants have obtained gains, profits, and advantages as a result of their unlawful acts.

38. Plaintiffs have suffered monetary damages as a result of Defendants' acts.

## THIRD CLAIM FOR RELIEF

### (False Advertising)

39. Plaintiffs bring the following claim of unfair competition under the Lanham Act against Defendants and incorporate by reference the allegations contained in paragraphs 1 through 38 above.

40. Plaintiffs are informed and believe that Defendants source and/or alter counterfeit, used, expired or near expired, or Initial Cartridges for re-sale in the United States in counterfeit retail box packaging, representing them as new and genuine Epson ink cartridges and ink bottles.

41. Upon information and belief Defendants' advertising in connection with sales of their products, actually deceived and/or had the tendency to deceive a substantial segment of consumers in that the distinction between a new and counterfeit, used, and/or altered product is material, likely influencing the purchasing decision by unsuspecting consumers.

42. Defendants caused their false representations to be made in interstate commerce via their websites and various seller accounts.

43. Plaintiffs are injured as a result of Defendants' false representations concerning their products, either by direct diversion of sales from themselves to Defendants or by a lessening of the goodwill associated with their products.

- 12 -
Seiko Epson Corp., et al. v. Nelson, et al.: Complaint

44.     Defendants' acts have irreparably injured, and, unless enjoined, will continue to irreparably injury Plaintiffs, and Plaintiffs have no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand:

A.      That Defendants, their agents, servants, employees, representatives, successor and assigns, and all persons, firms, corporations or other entities in active concert or participation with any of said Defendants, be immediately and permanently enjoined from:

1. Infringing the Plaintiffs' Trademarks, either directly or contributorily, in any manner, including generally, but not limited to, manufacturing, reproducing, importing, advertising, selling and/or offering for sale any unauthorized product which features any of the Plaintiffs' Trademarks, and, specifically:

   a. Importing, manufacturing, distributing, advertising, selling and/or offering for sale the Infringing Product or any other unauthorized products which picture, reproduce, copy or use the likenesses of or bear a substantial similarity to any of Plaintiffs' Trademarks;

   b. Importing, manufacturing, reproducing, distributing, advertising, selling and/or offering for sale in connection thereto any unauthorized promotional materials, labels, packaging or containers which picture, reproduce, copy or use the likenesses of or bear a confusing similarity to the Plaintiffs' Trademarks;

   c. Engaging in any conduct that tends falsely to represent that, or is likely to confuse, mislead or deceive purchasers, Defendants' customers and/or members of the public to believe, the actions of Defendants or their Seller Accounts, the counterfeit products and related merchandise manufactured, sold and/or offered for sale by Defendants or their Seller Accounts, or Defendants or their Seller

Accounts themselves are connected with Plaintiffs, are sponsored, approved or licensed by Plaintiffs, or are affiliated with Plaintiffs;

    d.    Affixing, applying, annexing or using in connection with the importation, manufacture, distribution, advertising, sale and/or offer for sale or other use of any goods or services, a false description or representation, including words or other symbols, tending to falsely describe or represent such goods as being those of Plaintiffs;

    e.    Secreting, destroying, altering, removing or otherwise dealing with the Infringing Product or any books or records which may contain any information relating to the importing, manufacturing, producing, distributing, circulating, selling, marketing, offering for sale, advertising, promoting or displaying of all unauthorized products which infringe any of the Plaintiffs' Trademarks;

    f.    Aiding, abetting, contributing to or otherwise assisting anyone from infringing upon the Plaintiffs' Trademarks; and

    g.    Engaging in any of the aforesaid prohibited activities over the Internet.

2. "persons in active concert and participation" as described in para. a) includes but is not limited to Amazon.com, internet search engines that identify the Defendants' websites, Seller Accounts, or other seller accounts, in response to searches for the Plaintiffs' Trademarks (either through paid or non-paid listings), payment provider services that provide payment services to Defendants or their websites or seller accounts, web hosts that host content for Defendants or their websites or seller accounts, and registrars that hold domain names for the Defendants or their websites.

3. Specifically, Amazon and/or Amazon.com, and any other third-party service provider in privity with Defendants with actual notice of this Order

shall within two (2) business days receipt of this Order, disable, terminate and block any accounts used by Defendants, including accounts related to Defendants, that offer or sell counterfeit or infringing goods using Plaintiff's Trademarks, and provide to Plaintiffs all identifying and contact information for such accounts, all sales history, all associated financial information as well as all addresses used for the return of product by such accounts.

4. Otherwise competing unfairly with Plaintiffs in any manner;
5. Destroying or otherwise disposing of:
   a. Merchandise falsely bearing the Trademarks;
   b. Any other products which picture, reproduce, copy or use the likenesses of or bear a substantial similarity to any of the Trademarks;
   c. Any labels, packages, wrappers, containers or any other unauthorized promotion or advertising material item which reproduces, copies, counterfeits, imitates or bears any of the Trademarks;
   d. Any molds, screens, patterns, plates, negatives or other elements used for making or manufacturing products bearing the Trademarks;
   e. Any sales and supply or customer journals, ledgers, invoices, purchase orders, inventory control documents, bank records, catalogs and all other business records, believed to concern the manufacture, purchase, advertising, sale or offering for sale of products related to the ink cartridges;

B. That those Defendants infringing upon the Trademarks be required to pay actual damages increased to the maximum extent permitted by law and/or other applicable damages at Plaintiffs' election jointly and severally;

C. That Defendants' profits, assets, inventory, and records, be enjoined or restrained during the pendency of this Action pursuant to 15 U.S.C. § 1116 and Fed. R. Civ. P. 65;

D. That actual damages be trebled pursuant to 15 U.S.C. § 1117;

E. That Defendants account for and pay over to Plaintiffs all damages sustained by Plaintiffs and profits realized by Defendants by reason of Defendants' unlawful acts herein alleged and that those damages be increased as provided by law jointly and severally;

F. That Plaintiffs recover from Defendants their costs of this action and reasonable attorneys' fees; and

G. That Plaintiffs have all other and further relief as the Court may deem just and proper under the circumstances.

Dated: February 16, 2021          Wang Law Corporation

                                  By: _____
                                     Annie S. Wang
                                     J. Andrew Coombs, Of Counsel
                                  Attorneys for Plaintiffs Seiko Epson
                                  Corporation and Epson America, Inc.

# DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs Seiko Epson Corporation and Epson America, Inc. hereby demands a trial by jury of all issues so triable.

Dated: February 16, 2021                    Wang Law Corporation

By: _____
Annie S. Wang
J. Andrew Coombs, Of Counsel
Attorneys for Plaintiffs Seiko Epson
Corporation and Epson America, Inc.

# EXHIBIT A

# SEC'S TRADEMARKS

| Trademark | Registration Number | Date of Registration | Class(es) of Goods |
|---|---|---|---|
| EPSON | 1,134,004 | 4/29/1980 | 9 |
| EPSON | 2,144,386 | 3/17/1998 | 2, 9 and 16 |
| EPSON | 2,949,374 | 5/10/2005 | 16 |
| EPSON | 3,092,025 | 5/16/2006 | 9 |
| EPSON | 3,520,274 | 10/21/2008 | 9 |
| EPSON EXCEED YOUR VISION (logo) | 3,448,351 | 6/17/2008 | 2, 9 and 16 |
| Better Products for a Better Future (logo) | 3,875,333 | 11/16/2010 | 2, 9, 16 and 40 |
| CLARIA | 3,428,711 | 5/13/2008 | 2 |
| DURABRITE | 2,644,235 | 10/29/2002 | 2 |
| ECOTANK | 4,875,047 | 12/22/2015 | 2 and 9 |
| ULTRACHROME | 4,265,246 | 12/25/2012 | 2 |
| (design mark) | 5,402,648 | 2/13/2018 | 2 |
| (ink bottle design mark) | 5,514,446 | 7/10/2018 | 2 |

# EXHIBIT B

|    | Seller Account | Amazon Seller ID | ASIN | FNSKU | Order Number |
|----|---|---|---|---|---|
| 1  | GANTERY | A21HSFXMIKO7ZF | B00657ZR28 | X002H5VQP5 | 111-9814477-7848237 |
| 2  | GANTERY | A21HSFXMIKO7ZF | B012IWR4YC | X002HMPUPF | 111-6154225-9583439 |
| 3  | GANTERY | A21HSFXMIKO7ZF | B012IWPSAY | X002FI3YCH | 111-7095374-8963410 |
| 4  | GANTERY | A21HSFXMIKO7ZF | B00657ZR28 | X002H5VQP5 | 111-2997162-4441044 |
| 5  | GANTERY | A21HSFXMIKO7ZF | B00QU92ZKS | X001Z2QMPZ | 111-7262697-8609005 |
| 6  | GANTERY | A21HSFXMIKO7ZF | B072VQP5SH | X0029CBRXR | 111-8255986-8935420 |
| 7  | GANTERY | A21HSFXMIKO7ZF | B012IWPSAY | X002FI3YCH | 111-3329911-3065016 |
| 8  | TM Nelsons | A1R3QLIJDD0OOS | B012IWPSAY | X002FL1589 | 111-2473292-4938652 |
| 9  | TM Nelsons | A1R3QLIJDD0OOS | B00KDIU3FG | X0025G65M5 | 111-7015612-7004257 |
| 10 | GANTERY | A21HSFXMIKO7ZF | B00NFSDPOM | X0020KIFH9 | 111-8619732-6471462 |
| 11 | TM Nelsons | A1R3QLIJDD0OOS | B00NFSDPOM | X00279JDRJ | 111-2484091-1630646 |
| 12 | TM Nelsons | A1R3QLIJDD0OOS | B00KDITZD2 | X0024JKVQ9 | 111-4296548-6722614 |
| 13 | TM Nelsons | A1R3QLIJDD0OOS | B00KYFSZ9E | X0025JM5P3 | 111-3768410-2104226 |
| 14 | GANTERY | A21HSFXMIKO7ZF | B074R85Y7K | X00279RO89 | 111-2555749-7855462 |
| 15 | TM Nelsons | A1R3QLIJDD0OOS | B00NUXE7H6 | X002FL12JB | 111-8590931-0530622 |
| 16 | GANTERY | A21HSFXMIKO7ZF | B012IWPSAY | X002FI3YCH | 111-5742716-3857846 |
| 17 | TM Nelsons | A1R3QLIJDD0OOS | B001DPXX14 | X002HMIIOF | 111-1407293-5913811 |
| 18 | TM Nelsons | A1R3QLIJDD0OOS | B009NRU2UO | X002CDSQWN | 111-9931308-0288206 |
| 19 | TM Nelsons | A1R3QLIJDD0OOS | B00NFSDUBU | X0025HXBET | 111-6921005-2856224 |
| 20 | TM Nelsons | A1R3QLIJDD0OOS | B074RFMST8 | X0025HX9ZZ | 111-5448588-6157009 |
| 21 | GANTERY | A21HSFXMIKO7ZF | B012IWR5X2 | X002FICOTB | 111-5547378-6412246 |

| | | | | | |
|---|---|---|---|---|---|
| 22 | GANTERY | A21HSFXMIKO7ZF | B074RG2F4V | X0027CIPVL | 111-8127358-9160213 |
| 23 | TM Nelsons | A1R3QLIJDD0OOS | B06Y3TVWD6 | X002B5GK9X | 111-1367221-5547434 |
| 24 | TM Nelsons | A1R3QLIJDD0OOS | B074RFS8V3 | X0025TM2ZB | 111-7041300-5733855 |
| 25 | TM Nelsons | A1R3QLIJDD0OOS | B074RG6PN1 | X0027EHMBN | 111-1260870-8393045 |
| 26 | GANTERY | A21HSFXMIKO7ZF | B012IWR4YC | X002FIC6AD | 111-6367202-5611407 |
| 27 | TM Nelsons | A1R3QLIJDD0OOS | B00NFSDUJM | X0025IPCVX | 111-0564598-6133020 |
| 28 | GANTERY | A21HSFXMIKO7ZF | B074RG2F44 | X0027BLVUJ | 111-9800786-5194640 |
| 29 | GANTERY | A21HSFXMIKO7ZF | B012IWPSAY | X002FI3YCH | 114-2935335-2426663 |
| 30 | TM Nelsons | A1R3QLIJDD0OOS | B012IWPSAY | X002FL1589 | 114-6252069-5588206 |

Seiko Epson Corp., et al. v. Nelson, et al.: Complaint